IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL STEIN and AMY STEIN | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| FENESTRA AMERICA, L.L.C. and | : | |
| ZELUCK, INC. | : | No. 09-5038 |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                  March 9, 2010

Plaintiffs Randall and Amy Stein ("the Steins") bring the present lawsuit sounding in tort and contract law against Defendants Zeluck, Inc. ("Zeluck") and Fenestra America, L.L.C. ("Fenestra"). Currently before the Court is Defendants' motion to dismiss. For the reasons that follow, the Court will grant the motion in part, deny it in part, and grant the Steins leave to conduct limited discovery on one facet of their case and amend their complaint.

### I. BACKGROUND

In January of 2006, the Steins contracted with Cassella Builders, Inc. ("Cassella") to build a home on real property the Steins owned in Bryn Mawr, Pennsylvania. (Am. Compl. ¶ 6.) A representative of Zeluck, a window manufacturer, met with Mr. Stein, Cassella, and the Steins' architect to discuss the possibility that Zeluck would provide windows and doors for the home. (*Id.* ¶ 10.) During this meeting, the Zeluck representative suggested that the Steins consider using windows and doors from defendant Fenestra. (*Id.* ¶ 11.) According to the Zeluck representative, Fenestra windows and doors had a "multi-point locking system," which distinguished them from other windows and doors. (*Id.* ¶ 12.)

The Steins' architect recommended that the Steins select doors and windows from another manufacturer, which were within their budget. (*Id.* ¶¶ 15–16.) The Steins, however, opted for Fenestra doors and windows because of Fenestra's multi-point locking system. (*Id.* ¶¶ 16–17.) The Steins informed Cassella of their decision, and on or about July 28, 2006, Cassella entered into a contract with Fenestra whereby Cassella agreed to purchase windows and doors from Fenestra for $405,000. (*Id.* ¶ 18.) The contract made specific reference to the fact that the windows would feature "[Fenestra's] multi-point locking system" and an "integral stay" (*Id.* ¶¶ 19–21; Am. Compl. Ex. A [Fenestra Contract] at 2.)

According to the Steins, the windows and doors Fenestra provided were not as specified in the contract. (Am. Compl. ¶¶ 25–27.) Specifically, the Steins allege that the multi-point locking system and/or integral stay system did not work and/or was not installed in the windows or doors. (*Id.* ¶ 26.) Though the Steins and/or Cassella complained to Fenestra on several occasions, Fenestra did not fix the deficiencies. (*Id.* ¶¶ 29–30.)

The Steins, acting on their own behalf and as assignees of Cassella, filed this lawsuit on November 3, 2009. The Amended Complaint alleges that Fenestra breached its contract by failing to provide the multi-point locking system (Count I), that Fenestra and/or Zeluck negligently misrepresented the product that they were selling (Count II), that Fenestra breached the implied covenant of good faith and fair dealing (Count III), that Fenestra and/or Zeluck violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 (Count IV), and that Fenestra and/or Zeluck breached express and implied warranties (Counts V, VI). The Steins also allege that, despite their separate corporate existence, Fenestra and Zeluck are functionally a single entity and should therefore be held jointly and severally liable for the

obligations of the other (Count VII).

On January 7, 2010, Defendants moved to dismiss Counts II, III, IV, and VII of the Amended Complaint and to dismiss Counts V and VI with respect to Zeluck.

**II.  STANDARD OF REVIEW**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must then make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.  DISCUSSION

#### A.  Negligent Misrepresentation/Fraudulent Inducement Claim

##### 1.  *Statute of Limitations*

First, the Defendants allege that the Steins' claim for negligent misrepresentation (Count II)

4

is barred by the statute of limitations. Under Pennsylvania law, claims of negligence and other tortious conduct is governed by a two-year statute of limitations. 42 PA. CONS. STAT. ANN. § 5524(7) (West Supp. 2009). The Complaint in this case was filed on November 3, 2009, so the Steins' tort allegations are timely only if the cause of action for those claims accrued no earlier than November 3, 2007. Defendants argue that the accrual date is July 28, 2006, the date the contract was formed. (Mot. to Dismiss at 8.) The Steins argue that the accrual date is sometime in the Spring of 2008, when the windows were installed in the house and the Steins realized that the windows did not function properly.

Under Pennsylvania law, the discovery rule tolls the limitations period where "the injury or its cause was neither known nor reasonably knowable." *Padalino v. Std. Fire Ins. Co.*, 616 F. Supp.2d 538, 546 (E.D. Pa. 2008). Since the Steins could not possibly have known of their injury until the windows were delivered to them, it is preposterous to suggest that the limitations period began to run the moment the ink had dried on the purchase contract. Defendants do not suggest that the Steins were aware of the alleged defect in the windows any earlier than the Spring of 2008. Therefore, the Steins' complaint is not time-barred.

      2.      Economic Loss Doctrine

In Pennsylvania, "economic losses may not be recovered in tort (negligence) absent physical injury or property damage." *Spivack v. Berks Ridge Corp.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990). Where the plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort. *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 128 (Pa. Super. Ct. 1989). The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement

flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Defendants argue that the Steins have alleged no loss other than that their windows and doors were defective or failed to meet contract specifications. Therefore, they contend that Count II should be dismissed under the economic loss doctrine.

In their response, the Steins argue that, despite being labeled "Negligent Misrepresentation,"[1] Count II actually charges Defendants with fraudulent inducement.[2] This appears to be an attempt to plead around the economic loss doctrine, which certainly applies to negligent misrepresentation claims[3] but which some courts have said does not apply to intentional torts.[4]

Regardless of whether Count II makes a charge of negligent misrepresentation or fraudulent

---

[1] The elements of a negligent misrepresentation are (1) misrepresentation of a material fact; (2) the party making the misrepresentation ought to have known of the falsity of his representation; (3) intent to induce another to act; (4) justifiable reliance; and (5) injury. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

[2] The elements of a fraudulent inducement claim are: (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance. *Bortz*, 729 A.2d at 560.

[3] *See, e.g.*, *Duquesne Light*, 66 F.3d at 620; *North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council*, Civ. A. No. 99-2050, 2000 WL 230214, at *7–8 (E.D. Pa. Feb. 29, 2000).

[4] *See, e.g.*, *First Republic Bank v. Brand*, 50 Pa. D. & C.4th 329, Civ. A. No. 147, 2000 WL 33394627, *6–7 (Pa. Com. Pl., Dec. 19, 2000); *KNK Medical-Dental Specialties, Ltd. v. Tamex Corp*, Civ. A. No. 99-3409, 2000 WL 1470665, at *5 (E.D. Pa. Sep. 28, 2000) (noting "a split of authority among Pennsylvania district courts as to whether the economic loss doctrine applies to intentional fraud claims" and refusing to apply the economic loss doctrine to an intentional fraud claim), and *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 658 (W.D. Pa. 1999).

inducement, it must be dismissed.[5]  As noted above, negligent misrepresentation claims are unquestionably subject to the economic loss doctrine.  *See Duquesne Light,* 66 F.3d at 620; *North Am. Roofing & Sheet Metal Co.*, 2000 WL 230214, at *7–8.  The Steins allege no physical injury or property damage, so if their claim is for negligent misrepresentation, it should be dismissed under the economic loss doctrine.

Even if this Court were to accept that Count II is a charge of fraudulent inducement, this allegation should still be dismissed.  Although some lower Pennsylvania courts have held that the economic loss doctrine does not apply to intentional torts, the Third Circuit has predicted that the Pennsylvania Supreme Court would find the economic loss doctrine applicable in such circumstances.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680–81 (3d Cir. 2002).  Noting that "the law in Pennsylvania with respect to the application of the economic loss doctrine to intentional fraud actions remains unsettled" and that "the Supreme Court of Pennsylvania and the other Pennsylvania appellate courts have not resolved the issue in a published opinion" the court in *Werwinski* thoroughly detailed conflicting authority on the issue in other jurisdictions.  *Id.* at 675.  The Third Circuit panel noted that it was "particularly . . . influenced by an emerging trend . . . 'recogniz[ing] a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independent[ly] of the underlying contract.'" *Id.* at 676 (quoting *Raytheon Co. v. McGraw-Edison Co., Inc.*, 979 F. Supp. 858, 870 (E.D. Wis. 1997)).  In *Werwinski* the court approvingly cited a Michigan state appellate court case, which recognized an exception to the economic loss doctrine for fraud-in-the-inducement claims, but only if the fraud is extraneous to the

---

[5] Since resolving the question of whether Count II charges Defendants with negligent or intentional misrepresentation is unnecessary to resolve the present motion, the Court issues no opinion on the matter.

7

contract, not interwoven with the breach of contract. *Id.* (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)). The rationale for this is that "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." *Id.* (citing *Huron*, 532 N.W.2d at 545).

The district court in *Werwinski* applied this reasoning in ordering judgment on the pleadings for the defendants on their fraudulent concealment claim, and the Third Circuit affirmed. *Id.* at 678, 680–81. The Third Circuit noted that both sides had good policy justifications for their position: On the one hand, the court recognized that applying tort law in this context would deter fraudulent behavior. *Id.* at 679. On the other hand, the harm to the plaintiff is the same whether the misrepresentation is fraudulent or negligent. *Id.* Furthermore, when the alleged misrepresentation relates to the quality or characteristics of the goods sold, contract remedies "can provide for compensation to be awarded for these economic losses, regardless of whether the misrepresentation is innocent, negligent, or intentional." *Id.* at 680. Faced with these competing policy justifications, the Third Circuit ultimately concluded that "we should opt for the interpretation that restricts liability, rather than expands it" and affirmed the District Court's decision to apply the economic loss doctrine to fraudulent concealment claims. *Id.* (citing *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)). Not aware of any intervening pronouncements of the Pennsylvania Supreme Court that rebuts the Third Circuit's analysis, this Court follows *Werwinski*'s holding that there is no exception to the economic loss doctrine for acts of intentional fraud.

As in *Werwinski*, the alleged fraud the Steins point to is "undergirded by factual allegations identical to those supporting their breach of contract counts" and "did not cause harm to the plaintiffs

8

distinct from [that] caused by the breach of contract." *Id.* at 678 (quoting *Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 201 (D.N.J. 1989)). The alleged misrepresentation merely concerned the quality of goods that are the subject of a contract. Thus, the Steins' common law tort claims are clearly intertwined with, rather than extraneous to, their contract claims and therefore will be dismissed pursuant to the economic loss doctrine.[6]

### B. Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that the Steins have failed to adequately state a plausible claim for relief on their claim of breach of the covenant of good faith and fair dealing. They argue that a party may not maintain such a claim where the allegations of bad faith are identical to a claim for relief under an established cause of action. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91–92 (3d Cir. 2000). Here, Defendants argue, the Steins' claim with respect to good faith and fair dealing is identical to their contract claim and hence can be dismissed.

Plaintiffs accede to this argument and the Court will therefore dismiss the independent good faith and fair dealing claim.

### C. UTPCPL claim

The UTPCPL gives a private right of action to those who "purchase[] or lease [] goods or services primarily for personal, family or household purposes and thereby suffer[] any ascertainable loss of money or property . . . as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act . . . ." 73 PA. CONS. STAT. ANN. § 201-9.2(a)

---

[6] Defendants also argued that Count II is barred by the gist of the action doctrine, which precludes a plaintiff from recasting a breach of contract claim into a tort claim. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). Having disposed of that Count with its analysis of the economic loss doctrine, the Court need not address the gist of the action doctrine.

9

(West 2008).

Defendants argue that the Steins' UTPCPL claims are barred by the economic loss doctrine, again citing the Third Circuit's decision in *Werwinski*, 286 F.3d at 681 (3d Cir. 2002) ("[W]e do not believe that the district court erred in applying the [economic loss] doctrine to appellants' UTPCPL claims.").

The Steins rely on several Pennsylvania lower court decisions declining to follow *Werwinski* and instead holding that a plaintiff's UTPCPL claims is not barred by the economic loss doctrine. *Smith v. Reinhart Ford*, 68 Pa. D & C.4th 432, 438 (Pa. Com. Pl. 2004); *Oppenheimer v. York Int'l*, No. 4348, 2002 WL 31409949, at *6 (Pa. Com. Pl. Oct. 25, 2002); *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 31053838, at *7 (Pa. Com. Pl. Sept. 11, 2002). Those decisions all disagreed with the analysis in *Werwinski* and declined to follow it because Pennsylvania state courts are not bound by federal decisions interpreting Pennsylvania state law. *See Hutchinson v. Luddy*, 763 A.2d 826, 837 n.8 (Pa. Super. Ct. 2000).

When this Court sits in its diversity jurisdiction and applies Pennsylvania law, it is not bound by the decisions of lower Pennsylvania courts when the Third Circuit has predicted that the Pennsylvania Supreme Court will decide an issue differently. *See Mansman v. Tuman*, 970 F. Supp. 389, 402 (E.D. Pa. 1997) ("The Third Circuit's interpretation of Pennsylvania law is binding on the district court . . . ."); *Cohen v. Am. Int'l Ins. Co.*, Civ. A. No. 95-5243, 1996 WL 103793, at *3 (E.D. Pa. March 7, 1996) ("The Third Circuit's prediction of how Pennsylvania's highest court will rule carries authority independent of intermediate state courts' decisions."). Perhaps recognizing that this Court is obliged to follow Third Circuit precedent even when it conflicts with decisions of lower Pennsylvania courts, the Steins appear to argue that *Werwinksi* is not in conflict with the

Pennsylvania state court cases they cite. According to the Steins, these cases read together stand for the proposition that the economic loss doctrine does not apply to the twenty specific acts prohibited by the UTPCPL, 73 PA. CONS. STAT. ANN. § 201-2(4)(i)–(xx), but does apply to the statute's "catch-all" provision, 73 PA. CONS. STAT. ANN. § 201-2(4)(xxi).[7]

None of the authority that the Steins cite supports this novel contention. The only binding authority on this Court that addresses the issue, *Werwinski*, makes no distinction among § 201-2(4)'s provisions; nor do the state court cases the Steins cite, notwithstanding the Steins' efforts to fashion a unified legal rule from these contrasting holdings. The Steins cite only one case that mentions a distinction between the catch-all provision and the specific prohibitions of the UTPCPL, *DeFebo v. Andersen Windows, Inc.*, 654 F. Supp. 2d 285 (E.D. Pa. 2009).

*DeFebo* involved facts very similar to this case: the plaintiff was building a home and purchased windows that, when delivered, were not to specification. *Id.* at 287. He sued, alleging breach of contract, tortious misrepresentation, and violation of the UTPCPL. *Id.* at 288. Judge Baylson, in a thorough published opinion, noted the disparate decisions on this issue and concluded, as this Court does, that a federal district court is bound to apply the dictates of the Circuit Court under which it sits even in the face of conflicting authority in the state's lower courts. *Id.* at 294. Judge Baylson therefore dismissed DeFebo's UTPCPL claim, but granted leave to amend the complaint.

Although the *DeFebo* court expressed its belief that the UTPCPL claim in that case was

---

[7] The so-called "catch-all" provision defines an "unfair method of competition" and an "unfair or deceptive act or practice" to include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. CONS. STAT. ANN. § 201-2(4)(xxi).

11

brought under that statute's catch-all provision, nowhere did it suggest that the applicability of the economic loss doctrine was contingent on this fact. *Id.* at 291–92. Judge Baylson explicitly noted that he was allowing an amendment so that "Plaintiff may allege facts that support a claim for damages that does not implicate the economic loss doctrine or that falls within the exception to that doctrine for fraud claims that are not intertwined with breach of contract claims," noting that the court was not ruling that such a claim necessarily existed in that case. *Id.* at 294. As the court had just followed the Third Circuit's holding that the economic loss doctrine applies to claims under the UTPCPL, there is no reason to believe that *DeFebo* supports the distinction the Steins suggest.

Therefore, this Court follows *Werwinski* and holds that the economic loss doctrine applies here to bar the Steins' UTPCPL claims, which are clearly intertwined with their breach of contract claims.

### D. Piercing the Corporate Veil

Defendants argue that the Steins have failed to plead any facts that would support piercing the corporate veil and holding Zeluck and Fenestra jointly liable for the debts of each other. In considering whether the corporate veil should be pierced, the relevant factors for a court to consider include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Defendants claim that the facts that the Steins have pleaded—that Fenestra and Zeluck share identity of ownership, operate under unified administrative control, and have similar business functions—is not relevant to the analysis. In their response, the Steins have requested an opportunity to conduct discovery regarding Zeluck and Fenestra's adherence to corporate formalities, intermingling of corporate assets, and the extent to which each

entity used the other to perpetuate a fraud. The Court will grant a period of limited discovery on these issues and allow the Plaintiffs to amend their Complaint to allege facts supporting their argument that Zeluck and Fenestra are jointly and severally liable for the debts of each other.

## IV. CONCLUSION

Despite the window dressing, this Court sees right through the Steins' tort claims and recognizes this case for what it is: a breach of contract action. Therefore, the Court will grant Defendants' request to dismiss Counts II and IV of the Amended Complaint. The Court will give the Steins a period in which to conduct limited discovery on the issue of whether the separate corporate forms of Zeluck and Fenestra should be disregarded, and amend their Complaint to include additional facts supporting their claim that corporate veils should be pierced in this case. An appropriate order will be docketed separately.